# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

RICHARD F. BIBBINS,

        Plaintiff,

v.

DES MOINES POLICE DEPARTMENT, *et al*.,

        Defendants.

Case No. C13-139-RAJ-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Richard Bibbins is a state prisoner who is currently incarcerated at the Washington State Penitentiary in Walla Walla, Washington. He brings this action under 42 U.S.C. § 1983 to allege violations of his constitutional rights arising out of his arrest by members of the City of Des Moines Police Department in December 2012. Specifically, plaintiff asserts that officers used excessive force in effectuating his arrest. Plaintiff identifies as defendants in this action the Des Moines Police Department and John Does Police Officers 1-10. Plaintiff seeks compensatory and punitive damages.

Defendants have filed a motion for summary judgment seeking dismissal of the claims asserted by plaintiff in his complaint. Plaintiff, despite having been advised of the summary

REPORT AND RECOMMENDATION - 1

judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendants' motion for summary judgment. The Court, having reviewed defendants' summary judgment motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted, and plaintiff's complaint and this action should be dismissed with prejudice.

## BACKGROUND

Plaintiff's complaint arises out of a traffic stop conducted by City of Des Moines police officers in the early morning hours of December 4, 2012. (*See* Dkt. 7 at 3 and Dkt. 19, Ex. A.) Plaintiff was behind the wheel of a vehicle when Des Moines Police Officer Nowacki identified the vehicle as stolen and conducted a felony traffic stop. (Dkt. 19, Ex. A.) Des Moines Police Officer Dominic Arico responded to the scene to assist fellow officers. (*Id.*) At the time Officer Arico arrived, plaintiff was standing next to the vehicle with his hands up and Des Moines Police Officer Chevallier was instructing plaintiff to walk backward towards his voice. (*Id.*) Plaintiff complied with that directive. (Dkt. 19 at 2.) Officer Chevallier next instructed plaintiff to go down to his knees. (*Id.*, Ex. A.) Plaintiff indicated that he had some sort of issue with his knee and made no move to comply with Officer Chevallier's directive. (*See id.*, Exs. A and B.)

Plaintiff was again directed to go to the ground and when he failed to immediately comply with this second directive, Officer Arico approached plaintiff, wrapped his leg around plaintiff's leg, and pushed him to the ground. (*See id*, Ex. A and Dkt. 21, Ex. A.) Officer Arico then handcuffed plaintiff and plaintiff was pulled to his feet and escorted to the back of Officer Nowacki's vehicle to be searched. (*See id.*) Plaintiff was thereafter placed in the backseat of Officer Nowacki's vehicle. (*See* Dkt. 21, Ex. A.)

REPORT AND RECOMMENDATION - 2

Plaintiff asserts in his complaint that two City of Des Moines police officers, whom he identifies only as John Doe #1 and John Doe #2, "twisted and injured" his "already injured right leg" in effectuating his arrest. (Dkt. 7 at 3.) Plaintiff maintains that he informed the officers repeatedly that he was injured. (*Id*.) He further maintains that the force used against him was not warranted because he at no time ever resisted the officers' attempt to arrest him. (*Id*.) Finally, plaintiff asserts that the Des Moines Police Department failed to properly train its officers. (*Id*.) Defendants argue in their motion for summary judgment that all of plaintiff's claims should be dismissed with prejudice. (*See* Dkt. 18.)

## DISCUSSION

### Summary Judgment

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a

motion for summary judgment, the court is required to draw all inferences in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248. The court may not weigh the evidence or make credibility determinations. *Id*.

### Des Moines Police Department

Defendants argue in their motion for summary judgment that the Des Moines Police Department is not a recognized legal entity amenable to suit under § 1983. Defendants are correct. A local government unit or municipality can be sued as a "person" under § 1983. *Monell v. Department of Social Servs., of City of New York*, 436 U.S. 658, 691 (1978). Thus, the City of Des Moines, for example, is a legal entity which is suable under § 1983. Plaintiff, however, did not name the City of Des Moines as a defendant in this action. Instead, he named the Des Moines Police Department as the party he believes is liable for the harm alleged in his complaint. Police departments are generally not considered suable entities separate from the city itself. *See West v. Waymire*, 114 F.3d 646, 647 (7th Cir. 1997); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1400 n. 1 (2d Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1214-15 (1992). Because the Des Moines Police Department is not a legal entity subject to suit under § 1983, plaintiff's claims against this defendant must be dismissed.

### John Doe Officers

Plaintiff alleges in his complaint that two "John Doe" officers unnecessarily twisted his right leg in effectuating his arrest after plaintiff advised them repeatedly that the leg was injured. He contends that the officers, through their actions, caused further injury to his leg and also caused injury to his knee. Plaintiff asserts that these officers' use of excessive force violated his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff was unable to specifically identify in his complaint the individual officers involved in the alleged use of force and, thus, no individual defendants have been served in this action. However, the summary judgment papers, which were submitted on behalf of the Des Moines Police Department and the un-served John Doe officers, volunteer that Officer Dominic Arico was involved in the use of force. Defendants deny in their motion papers that any other officer was involved in the use of force and they assert that dash camera videos which were submitted in support of the motion for summary judgment bear this out.

The posture of this case is unique in that one of the officers involved in plaintiff's arrest has identified himself but is technically not a defendant in this case because plaintiff has never asked to amend his complaint to add this individual, and this individual has never been served. However, given that Officer Arico has self-identified as one of the John Doe officers, and given that Officer Arica has presented evidence and argument on the excessive force claim asserted by plaintiff in his complaint, the Court will address the substantive claim as to Officer Arica.

As defendants correctly point out, the Eighth Amendment's prohibition against cruel and unusual punishment applies only after conviction and sentence. *Graham v. Connor*, 490 U.S. 386, 393 & n. 6 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977)). Claims of excessive force are properly evaluated under the Fourth Amendment's reasonableness standard: "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citation omitted).

The Court, in *Graham*, cautioned that reasonableness must be assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments

REPORT AND RECOMMENDATION - 5

– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. The Court made clear that proper application of the reasonableness standard requires careful consideration of the specific facts and circumstances of each individual case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The Ninth Circuit has refined this standard somewhat. Specifically, the Ninth Circuit has made clear that when evaluating a claim of excessive force, the first step must be assessment of "the quantum of force used." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007). This is so "because the factors articulated in *Graham*, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." *Davis*, 478 F.3d at 1055 (internal quotation and citation omitted).

Officer Arico's use of force was not severe. The video evidence presented in support of defendants' summary judgment motion shows that Officer Arico's application of force involved sweeping plaintiff's left leg out from underneath him and pushing him to the ground when plaintiff failed to comply with directives to get on the ground. (Dkt. 21, Ex. A.) Plaintiff suggests that even this relatively minimal amount of force was unreasonable because of his already injured leg and because he was not actively resisting officers' attempt to arrest him. (Dkt. 7 at 3.) However, plaintiff's view concerning the reasonableness of officers' actions does not take into account all of the circumstances surrounding the application of force.

At the time officers plaintiff was stopped by Officer Nowacki, he was occupying a stolen vehicle. While not the most serious of offenses, felony stops such as the one undertaken in

REPORT AND RECOMMENDATION - 6

plaintiff's case are deemed to be high-risk because officers are dealing with "an unknown suspect under circumstances that tend to cause a suspect to use force to flee from police intervention." (Dkt. 19 at 2.) Accordingly, a specific protocol is followed to ensure the safety of the public, the officers, and the suspect. (*Id*.) That protocol was followed in plaintiff's case. (*See id*. at 2-3.)

Of particular concern to officers in such high-risk situations is a suspect's failure to comply with officers' commands because a refusal to comply with commands can be a stalling tactic employed to allow a suspect to assess his options such as whether and/or how to harm himself or others, and whether and/or how to flee. (*See* Dkt. 19 at 3.) As Officer Arico explains, when a felony suspect fails to comply with commands, he is considered a serious threat and danger to himself or others and the goal of officers is neutralize the risks immediately. (*Id*.)

It is clear from the video evidence of plaintiff's traffic stop that plaintiff was able to, and did in fact, comply with officers directives up to a point. (*See* Dkt. 19, Ex. A and Dkt. 21, Ex. A.) While plaintiff informed officers between the first and second commands to go to the ground that he had an issue with his knee, the injury was not apparent at the time he was walking backwards toward the officers and plaintiff's failure to comply with subsequent directives reasonably caused officers concern.[1] Under these circumstances, the application of some degree of force was warranted to assume control over plaintiff and the amount of force applied by Officer Arico appears to have been proportionate to the perceived risk that plaintiff presented to officers at the time.

---

[1] Plaintiff asserts that he repeatedly informed officers of his pre-existing leg injury. (*See* Dkt. 7 at 3.) However, the video evidence demonstrates that these "repeated" complaints came after Officer Arico had taken him to the ground. (*See* Dkt. 19, Ex. A and Dkt. 21, Ex. A.)

REPORT AND RECOMMENDATION - 7

The evidence in the record, which plaintiff fails to rebut, establishes that Officer Arico's actions, when viewed in light of all of the circumstances, were objectively reasonable. Plaintiff therefore fails to demonstrate any violation of his Fourth Amendment rights.

## CONCLUSION

Based upon the foregoing, this Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 29th day of January, 2014.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge